IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EDWARD MENNES,

                                                OPINION AND ORDER

                  Plaintiff,

                                                13-cv-822-bbc

     v.

CAPITAL ONE, N.A. and
HSBC CARD SERVICES INC.,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this civil action, plaintiff Edward Mennes has filed a five count complaint against defendants Capital One, N.A. and HSBC Card Services Inc. In the first four counts, plaintiff alleges that defendants reported his permanently extinguished debt as "charged off with a balance due" in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681k; the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692m; and the Wisconsin Consumer Act, Wis. Stat. §§ 427.101-05. In count 5, plaintiff claims that Capital One violated the Fair Debt Collection Practices Act by failing to inform him that a letter it sent plaintiff was an attempt to collect a debt. Before the court is defendants' motion to dismiss all counts for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Dkt. #11.

      Defendants contend that (1) Capital One is not a debt collector that may be held liable under the Fair Debt Collection Practices Act; (2) counts 1 through 4 fail because plaintiff improperly inferred that his debt was discharged permanently when HSBC filed a

1

Form 1099-C; and (3) count 5 fails because Capital One's correspondence with plaintiff was purely informational and was not an attempt to collect a debt. I conclude that Capital One is a debt collector subject to the Fair Debt Collection Practices Act and that plaintiff's allegations concerning its correspondence with plaintiff are sufficient to state a claim under the Act. However, I agree with defendants that in the absence of other evidence that the debt was canceled, Form 1099-C does not extinguish a debt or relieve the debtor from liability for it. As a result, I am (1) granting defendants' motion to dismiss counts 1-4 without prejudice and allowing plaintiff until May 27, 2014 to file an amended complaint adding allegations to support his claim that his debt was actually canceled; and (2) denying the motion to dismiss count 5.

From plaintiff's complaint, I find the following facts for the purpose of deciding this motion.

## ALLEGATIONS OF FACT

Plaintiff Edward Mennes, a resident of Madison, Wisconsin, had a credit card issued by defendant HSBC. When plaintiff was unable to pay his outstanding balance, defendant HSBC issued a 1099-C "Cancellation of Debt" for the 2011 tax year, stating that the debt of $5,135.55 was canceled on November 12, 2011.

Defendant Capital One furnishes consumer information and performs debt collection. On May 1, 2012, it purchased HSBC's account portfolio, including plaintiff's account.

In February 2013, plaintiff obtained a copy of his credit report and found that the HSBC card was being reported as "charged off" with a balance due, even though the debt had been canceled. Plaintiff began the dispute process through Trans Union and Equifax and obtained the following results:

- After an April 3, 2013 dispute with Trans Union, the account balance was $6,515 and reported as "charged off."

- After an April 5, 2013 dispute with Equifax, the account balance was $6,515 and reported as "charged off."

- After a May 30, 2013 dispute with Trans Union, the account balance was $6,515 and reported as "charged off."

- After a July 3, 2013 dispute with Trans Union, the account balance was $6,515 and reported as "charged off."

On August 1, 2013, Capital One wrote to plaintiff, informing him that "[w]e have received your credit bureau dispute regarding the DIRECT MERCHANTS BANK account" and "have received and processed multiple disputes regarding this Account." Dkt. #1, Exh. B. Capital One went on to state that after investigation, it was "reporting the account status" as "Unpaid balance of $6,515.27 reported as a loss/charge-off." Id.

On August 23, 2013, plaintiff filed a dispute with Equifax and he filed a dispute with Trans Union on September 16, 2013. After both disputes, the account balance was $6,515 and reported as "charged off."

After the multiple disputes, defendant HSBC is still reporting the debt to plaintiff's credit report as "charged off" with a balance due and owing. Defendants HSBC and Capital One have left this information on plaintiff's credit report and are attempting to collect the

debt because a "charge off" with a balance due indicates that collection attempts can still be made.

## OPINION

### A. Capital One as a Debt Collector

In order to be liable under the Fair Debt Collection Practices Act, a defendant must be a "debt collector," which is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). The term does not include

> (B)  any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.
>
> *   *   *
>
> (F)  any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . .

§ 1692a(6).

In contrast, a "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default *solely for the purpose of facilitating*

4

*collection of such debt for another*. § 1692a(4) (emphasis added). Creditors are not covered by the Act. Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003).

Defendants contend that Capital One is actually a creditor to whom plaintiff owes his debt and is exempt from liability under the Act because plaintiff has not alleged that Capital One purchased plaintiff's account solely for the purpose of collecting plaintiff's debt for HSBC or anyone else. (Defendants also argue that if plaintiff is correct that the filing of Form 1099-C canceled his debt, there was no debt to collect on and therefore no debt collector. As explained below, it is impossible to determine from the allegations in the complaint whether plaintiff's debt actually was canceled. Accordingly, I have not addressed this argument.)

However, as plaintiff points out and defendants acknowledge, the Court of Appeals for the Seventh Circuit has held that

> [F]or debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category. If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector.

Schlosser, 323 F.3d at 536. See also McKinney v. Cadleway Properties, Inc., 548 F.3d 496, 501 (7th Cir. 2008) (quoting same). The court explained that the Act distinguishes between these two possibilities by referring to the status of the debt at the time of the assignment: "the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." Id. It determined that "[f]or those who acquire debts originated by others, the distinction drawn by the statute—whether

5

the loan was in default at the time of the assignment—makes sense as an indication of whether the activity directed at the consumer will be servicing or collection." Id. at 538. "Accordingly, the purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself." McKinney, 548 F.3d at 501 (citing Schlosser, 323 F.3d at 538-39).

Under the court of appeals' interpretation of the Act, Capital One is a debt collector because plaintiff was in default at the time Capital One acquired his debt from HSBC. Although defendants argue that the court of appeals improperly combined the definition of "creditor" with the exceptions to the definition of "debt collector," they have not made a persuasive case for not following Schlosser and McKinney. Even if they had, I am bound by the court's opinion. Therefore, I infer from plaintiff's allegations that Capital One was acting as a "debt collector" in this case.

### B. Form 1099-C as Evidence of Debt Cancellation

In the first four counts of his complaint alleging violations of the fair debt collection and fair credit reporting acts, plaintiff contends that defendants falsely reported his debt as "charged off with a balance due" because HSBC filed a Form 1099-C, which he believes discharged his debt without any obligation for repayment. The Internal Revenue Code requires any entity discharging an indebtedness to file an "information return" on Form 1099–C with the Internal Revenue Service (IRS). 26 C.F.R. § 1.6050P–1(a). A "discharge of indebtedness is deemed to have occurred" for the purposes of the regulation "only if there

6

has occurred an identifiable event described in paragraph (b)(2) of this section, whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred." Id. (emphasis added). The regulation lists eight "identifiable events:"

> (A) A discharge of indebtedness under title 11 of the United States Code (bankruptcy);
>
> (B) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or similar proceeding in a federal or State court. . .;
>
> (C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness . . . or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;
>
> (D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness;
>
> (E) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;
>
> (F) A discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration;
>
> (G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt; or
>
> (H) In the case of an entity described in section 6050P(c)(2)(A) through (C), the expiration of the non-payment testing period. . .

26 C.F.R. §§ 1.6050P–1(b)(2).

Defendants contend that plaintiff has failed to state a claim under the fair debt collection and fair credit reporting acts because the only basis he alleges for the cancellation of his debt is HSBC's filing of the Form 1099-C.  They argue that because the regulation requires creditors to file the form even in cases where a debt has not actually been discharged, the IRS treats Form 1099-C merely as a reporting obligation and not as a means of effectuating the discharge of a debt.  In support of their argument, defendants cite several (mostly unpublished) cases in which federal courts held that in the absence of other evidence that the debt was canceled, Form 1099-C does not extinguish a debt or relieve the debtor from liability.  E.g., FDIC v. Cashion, 720 F.3d 169, 176-81 (4th Cir. 2013) (Form 1099–C did not create issue of material fact as to whether debt had been canceled or assigned); Owens v. Commissioner of Internal Revenue, 2003 WL 21196200, at *3 (5th Cir. May 15, 2003) (Form 1099–C was not evidence that creditor actually canceled debt, but at most reflected intention to cancel debt in the future); Capital One v. Massey, 2011 WL 3299934, at *3 (S.D. Tex. Aug. 1, 2011) ("a 1099-C does not discharge debtors from liability" and "fact that [creditor] issued a 1099-C in relation to the [b]orrowers' indebtedness is irrelevant and does not raise a genuine issue of material fact"); United States v. Reed, 2010 WL 3656001, at *2 (E.D. Tenn. 2010) (in absence of evidence "such as a surrender or cancellation of the note or a signed writing" by creditor, creditor was entitled to judgment as a matter of law).  Several federal bankruptcy and tax courts have taken the same approach.  E.g., In re Sarno, 463 B.R. 163, 168 (Bankr. D. Mass. 2011); In re Zilka, 407 B.R. 684, 689 (Bankr. W.D. Penn. 2009); Carrington Mortgage Services, Inc. v. Riley, 478

B.R. 736, 744 (Bankr. D.S.C. 2012); Sims v. Commissioner, 2002 WL 1825373, at *2 (T.C. Summ. Op. 2002-76 Jun. 26, 2002).

Plaintiff counters that he is not sure what "identifiable event" caused HSBC to file the 1099-C form, but the form meant that HSBC either thought that it was legally barred from collecting the debt (identifiable events one through six) or had decided to discharge the debt (identifiable events seven and eight). Dkt. #15 at 5. He argues that there is a "well-balanced minority view that the issuance of a Form 1099-C will bar a creditor from collecting on the amount listed in the Form." Dkt. #15 at 2 and 4 (citing In re Reed, 492 B.R. 261 (Bankr. E.D. Tenn. 2013); In Re Crosby, 261 B.R. 470 (Bankr. Kan. 2001)). See also In re Welsh, 2006 WL 3859233 (Bankr. E.D. Pa. Oct. 27, 2006); Amtrust Bank v. Fossett, 223 Ariz. 438, 224 P.3d 935, 936–38 (Ariz. Ct. App. 2009); Franklin Credit Management Corp. v. Nicholas, 73 Conn. App. 830, 812 A.2d 51, 58–60 (2002). The courts issuing these opinionscourts reason that because filing a Form 1099–C has legal significance to the debtor's income tax liability, it would be inequitable to permit a creditor to collect the debt after having received the benefit of a "charge-off." E.g., Reed, 492 B.R. at 270 (26 U.S.C. § 61(a)(12) requires income from debt cancellation to be included in and taxed as part of debtor's gross income); Crosby, 261 B.R. at 474 (filing of 1099-C is analogous to assigning debt to IRS and "[w]ithout the forms, the debtors would not have had to report the discharge of indebtedness income to the IRS and pay tax on it"). Many of the courts following the minority approach have held that Form 1099-C constitutes prima facie evidence of the creditor's intent to discharge a debt, at which point the burden shifts

9

to the creditor to show that it filed the form by mistake or in conformance with another triggering event in the regulations. E.g., Welsh, 2006 WL 3859233, *1-2; Crosby, 261 B.R. at 474; Fossett, 224 P.3d at 938; Franklin Credit, 812 A.2d at 60.

However, weighing heavily in favor of the majority view are two information letters issued by the IRS in October 2005 that address the effect of Form 1099–C on the continuing liability of a debtor. In the first letter, the IRS addressed a creditor's concern that filing the Form 1099–C would constitute a written admission that it had discharged the debt and would therefore make debtors unwilling to pay on their obligations. Citing 26 C.F.R. §§ 1.6050P–1(a), the IRS responded that it "does not view a Form 1099–C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." IRS Info. 2005–0207, 2005 WL 3561135 (Dec. 30, 2005). In the second letter, the IRS assured a concerned creditor that filing a Form 1099-C satisfies the reporting requirements of the statute and implementing regulations, neither of which "prohibit collection activity after a creditor reports by filing a Form 1099-C." IRS Info. 2005–0208, 2005 WL 3561136 (Dec. 30, 2005).

Although the IRS expressed its interpretation in an information letter rather than in a regulation or ruling that would be subject to deference under Chevron U.S.A Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), its opinion is "entitled to respect" under Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), "but only to the extent that those interpretations have the power to persuade." Christensen v. Harris County, 529 U.S. 576, 587 (2000). Plaintiff contends that before an opinion letter should be given

10

probative weight, there must be a statutory or regulatory ambiguity, which is not present in this case. Dkt. #15 at 3 (citing National Cable & Telecommunications Association v. Brand X Internet Services, 545 U.S. 967, 980 (2005)). Plaintiff is incorrect. National Cable involved a binding declaratory ruling of the Federal Communications Commission which *was* subject to Chevron-deference and therefore required a finding of statutory ambiguity. Id. at 980-81. See also Chevron, 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). In Skidmore, the Court did not require a finding of statutory or regulatory ambiguity and explained that

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

Skidmore, 323 U.S. at 140. I find the IRS's view "persuasive because it fully encompasses the purpose of a Form 1099-C as an IRS reporting document and follows the plain language of the relevant regulation." Cashion, 720 F.3d at 179. Cf. Reed, 492 B.R. at 270 (finding regulatory language open to interpretation and IRS information letters "in direct conflict" with requirement that debtor be taxed on amount reported on 1099-C).

Given that the regulation requires the filing of Form 1099-C regardless whether the debt has actually been discharged, and that actual discharge of the debt is only one of the identifiable events that triggers the filing of a 1099-C form, I find the IRS interpretation

11

persuasive and agree with the majority of courts addressing this issue that without additional evidence, the filing of a 1099-C form does not by itself evidence debt cancellation as a matter of law. Cashion, 720 F.3d at 177. As defendants note, plaintiff bases counts 1 through 4 of his complaint solely on the allegation that HSBC canceled his debt by filing a Form 1099-C, which is not a sufficient reason to find in his favor. However, in Cashion and the other cases cited by defendant, the issue was before the court on a motion got summary judgment and not a motion to dismiss. Because it is possible that plaintiff can produce evidence that an actual discharge occurred in his case, I will dismiss counts 1 through 4 of the complaint without prejudice to plaintiff's filing an amended complaint adding allegations to support his claim that his debt was actually canceled. Plaintiff may have until May 27, 2014 to correct the deficiencies in his complaint. If he fails to respond by that date, I will convert the dismissal to one with prejudice.

### C. Capital One's Communication with Plaintiff

In count 5 of the compliant, plaintiff contends that Capital One violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(11), by failing to state in its August 1, 2013 letter to plaintiff that the communication was an attempt to collect a debt and that any information would be used for that purpose. In order to curtail abusive debt-collection practices, the Act imposes strict liability on debt collectors; a consumer need not show intentional or even negligent conduct by the debt collector to be entitled to damages. Wahl v. Midland Credit Management, Inc., 556 F.3d 643, 643–44 (7th Cir. 2009); Turner v.

J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2005).  Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Among other things, § 1692e requires a debt collector to disclose "in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11).  Section 1692a(2) defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

Although it is unclear whether the August 2013 letter was an initial or subsequent communication, Capital One did not identify itself as a debt collector or expressly state that it was attempting to collect a debt.  However, defendants contend that Capital One's correspondence with plaintiff does not fall within the scope of the Act because it was not made "in connection with the collection of any debt."  They argue that the letter was purely informational and did not contain any payment deadlines, threats to collect on the debt or demands for payment.  In support of their argument, defendants rely on several cases that have held a similar view, including Bailey v. Security National Servicing Corp., 154 F.3d 384, 388-89 (7th Cir. 1998) (letter not subject to § 1692e(11) because it did not demand any payment and merely informed plaintiffs about current status of their account).

The Court of Appeals for the Seventh Circuit has explained that "[n]either this circuit nor any other has established a bright-line rule for determining whether a communication

13

from a debt collector was made in connection with the collection of any debt." Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 384 (7th Cir. 2010). It noted that Bailey did not "establish a categorical rule that only an explicit demand for payment will qualify as a communication made in connection with the collection of a debt." Id. at 384-85. Indeed, other factors were important to the decision in Bailey, including the facts that the debtor had not missed any payments on the forbearance agreement that superseded the original loan and that the letter simply warned the debtor of consequences of missing a future forbearance payment. Id. at 384. See also Horkey v. J.V.D.B. & Associates, 333 F.3d 769 (7th Cir. 2003) (communication made specifically to induce debtor to settle debt triggers the Act). The court of appeals concluded that several factors come into play "in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt," including the nature of the parties' relationship and the purpose and context of the communication. Gburek, 614 F.3d at 385.

Following Gburek, I find that at the more permissive pleading stage, plaintiff's allegations concerning the context and content of the letter are sufficient to bring his claim within the scope of the Fair Debt Collection Practices Act. Plaintiff was in default on his credit card account, which Capital One acquired from HSBC. Capital One not only furnishes consumer information but also performs debt collection and, as explained above, is considered a debt collector with respect to plaintiff's account. The August 2013 letter indicates that Capital One was responsible for receiving, processing and investigating multiple disputes regarding plaintiff's account and that Capital One decided that plaintiff's

account had an unpaid balance due. It is not yet clear whether the letter meets the factors relevant to the "in connection with" element, so I will deny defendants' motion to dismiss count 5 of the complaint. Ruth v. Triumph Partnerships, 577 F.3d 790, 798 (7th Cir. 2009) ("whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact").

ORDER

IT IS ORDERED that

1. The motion to dismiss, dkt. #11, filed by defendants Capital One, N.A. and HSBC Card Services Inc. is GRANTED with respect to counts 1, 2, 3 and 4 of the complaint. Counts 1, 2, 3 and 4 of the complaint are DISMISSED without prejudice to plaintiff refiling them with additional allegations that are consistent with this opinion. If plaintiff fails to file an amended complaint that states a claim by May 27, 2014, these counts will be dismissed with prejudice.

2. Defendants' motion to dismiss count 5 of the complaint is DENIED.

Entered this 5th day of May, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge