UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EDWARD MENNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 13-C-822 |
| v. | ) |
| | ) |
| CAPITAL ONE, N.A. and HSBC CARD SERVICES INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS COUNTS I-IV OF PLAINTIFF'S AMENDED COMPLAINT**

Defendants, Capital One, N.A. ("Capital One") and HSBC Card Services, Inc. ("HSBC") (collectively "Defendants"), by counsel, respectfully submit the following memorandum in support of their Motion to Dismiss Counts I-IV of Plaintiff's Amended Complaint ("Amended Complaint") (Dkt. #21) pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

Following the dismissal of four of the five counts in his initial Complaint ("Complaint"), Plaintiff Edward Mennes ("Plaintiff") filed an Amended Complaint reasserting his earlier allegations that Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") (Counts I and II), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Count III), and the Wisconsin Consumer Act, Wis. Stat. § 427, *et seq.* ("WCA") (Count IV), when they reported his account as "charged off with a balance due." Like before, Plaintiff maintains that this reporting was inaccurate because his debt had supposedly been discharged and forgiven, based on his receipt of a Form 1099-C.

In previously dismissing these four counts, this Court specifically instructed Plaintiff that, in re-pleading those claims, he would need to "produce evidence that an *actual* discharge [of his debt] occurred in this case" and "add[ ] allegations to support his claim that his debt was *actually* cancelled." (Op., Dkt. #17 at 12 (emphasis added).) Because Plaintiff's Amended Complaint fails to do so, the claims set forth in Counts I-IV should once again be dismissed, *with prejudice*.[1]

### PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that, as a result of his inability to "pay what he owed" on his credit card, HSBC issued a Form 1099-C in November 2011. (Am. Compl. ¶¶ 15-17.) He does not allege when his default occurred, or when his account was charged off.[2] He does not allege that HSBC reported a zero balance to the credit bureaus, or that he received a signed writing from HSBC expressly stating that his debt had been forgiven. In fact, Plaintiff has admitted that he "is not sure what caused the issuance of the 1099-C form to him." (Resp., Dkt. #15 at 5.) Yet he now speculates "on information and belief" that he received the form because HSBC actually discharged his debt.(Compl. ¶ 18.) He thus alleges he was surprised to learn in February 2013, when he obtained a copy of his credit report, that his HSBC

---

[1] Although this 12(b)(6) motion is only directed to Counts I-IV, its filing nonetheless suspends the time Defendants have to answer the allegations of Count V. *Intercom Ventures, LLC v. FasTV, Inc.*, No. 13-C-232, 2013 WL 2357621, at *6 (N.D. Ill. May 28, 2013) (agreeing with the majority of courts and holding that "the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion") (internal quotations and citations omitted); *see also Brocksopp Engineering, Inc. v. Bach–Simpson Ltd.*, 136 F.R.D. 485, 486–87 (E.D. Wis. 1991) (holding that requiring an answer to unchallenged claims would result in duplicative sets of pleadings in the event the 12(b) motion is denied and cause confusion).

[2] Federal regulations mandate that banks charge-off credit card receivables after they have been delinquent 180 days. Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 20, 2000).

account had been "'charged off' with a balance due" because he believed "there was no balance due as the debt had been previously cancelled and discharged." (Am. Compl. ¶¶ 20-21.) Plaintiff alleges he subsequently disputed this notation with the three major credit bureaus, but that the trade line was verified each time. (Am. Compl. ¶¶ 21-25.) Based on these allegations, Plaintiff seeks statutory damages, actual damages, punitive damages, and attorney's fees and costs.

## ARGUMENT

Counts I-IV of Plaintiff's Amended Complaint are predicated on Plaintiff's belief that HSBC discharged his debt. As evidence of this "discharge," Plaintiff alleges he received a Form 1099-C. But, as this Court (like many others) has held, "the filing of a 1099-C form does not by itself evidence debt cancellation as a matter of law." (Op., Dkt. #17 at 12.) Attempting to overcome this hurdle, Plaintiff amended his complaint to include two additional allegations that, "on information and belief," HSBC issued the form because it discharged the debt, and that due to the discharge, HSBC issued the form. (Am. Comp. ¶¶ 18, 19.) Plaintiff's Amended Complaint thus boils down to the tautology that his debt was discharged because he received a Form 1099-C, and that he received the Form 1099-C because his debt was discharged. But other than alleging that he received a form, Plaintiff provides no specific factual or contextual support for his bald speculation that his debt was actually discharged. Consequently, Plaintiff's FCRA, FDCPA and WCA claims should be dismissed.

    **I.**    **PLAINTIFF'S FCRA CLAIMS AGAINST DEFENDANTS UNIFORMLY FAIL AS A MATTER OF LAW.**

In Counts I and II of his Amended Complaint, Plaintiff contends that each of the Defendants violated the FCRA when they allegedly "fail[ed] to conduct a reasonable

investigation with respect to the disputed information, [failed] to review all relevant information available, and [failed] to update Plaintiff's credit report to accurately reflect the status of the account," in violation of 15 U.S.C. § 1681s-2(b). (Am. Compl. ¶¶ 35, 42.) (Am. Compl. ¶ 50.) Plaintiff's sole basis for challenging the accuracy of the information Defendants reported to the relevant credit reporting agencies is his assertion that his debt was discharged. And Plaintiff's sole basis for asserting that his debt was discharged is his receipt of a Form 1099-C. But the mere issuance of a 1099-C does not establish actual discharge of an underlying debt given the purpose of the Form, the express language of governing regulations, and the IRS's interpretation of those regulations. Because Plaintiff's Amended Complaint does not contain any other facts to support his theory that his debt was *actually* discharged, Counts I and II of his Amended Complaint should be dismissed with prejudice.

### A. Relevant statutory and regulatory context.

The Internal Revenue Code ("IRC") sets forth certain requirements for reporting "information concerning transactions with other persons" to the Internal Revenue Service ("IRS") and, in particular, for returns relating to the cancellation of indebtedness. 26 U.S.C. § 6050P. IRS regulations have implemented those reporting obligations through the Form 1099–C filing requirement, which provides that:

> [A]ny applicable entity . . . that discharges an indebtedness of any person . . . must file an information return on Form 1099–C with the Internal Revenue Service. Solely for purposes of the reporting requirements of [the applicable statute and this regulation], a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, *whether or*

>*not an actual discharge of indebtedness has occurred* on or before the date on which the identifiable event has occurred.

26 C.F.R. § 1.6050P–1(a) (emphasis added). In addition to filing the form with the IRS, creditors are required to send a copy to the consumer. 26 C.F.R. § 1.6050P-1(f)(2).

There are eight "identifiable events" that trigger the 1099-C reporting obligation: (1) discharge through the debtor's filing for bankruptcy; (2) a "cancellation or extinguishment" of the debt that renders it unenforceable; (3) expiration of the statute of limitations for collection; (4) extinguishment of the debt following a creditor's election of foreclosure remedies that statutorily bar collection; (5) extinguishment of the debt through probate; (6) discharge by agreement of the parties for payment of less than full consideration; (7) a creditor's decision "to discontinue collection activity and discharge debt" or to apply "a defined policy . . . to discontinue collection activity" ; and (8) "expiration of the non-payment testing period." 26 C.F.R. § 1.6050P–1(b)(2)(i). The identifiable event triggering the obligation need not involve an actual discharge of the debt; rather, the event may be "deemed" to constitute a "discharge" "solely for purposes of" determining the reporting obligation, and "must be reported regardless of whether the debtor is subject to tax on the discharged debt." 26 C.F.R. § 1.6050P–1(a); 26 C.F.R. § 1.6050P–1 (b).

The plain language of the regulation makes it clear that filing a Form 1099–C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred. In other words, a creditor may have to file a Form 1099–C even though an actual discharge of indebtedness has not yet occurred or is not contemplated.

- 5 -

This makes sense, given that a creditor might only be filing the form because, for example, the non-payment testing period set forth in 26 C.F.R. § 1.6050P–1(b)(2)(i)(H) "transpired without debt collection activity." This does not mean the creditor intends to actually discharge the debt. *Debt Buyers' Ass'n v. Snow*, 481 F. Supp.2d 1, 13 (D.D.C. 2006).

This understanding of the creditor's obligation to file a Form 1099–C is also clearly expressed in the IRS's own interpretation of the regulations.[3] Two IRS Information Letters issued in October 2005 addressed concerns regarding the impact of a creditor's compliance with the Form 1099–C reporting obligation and the continuing liability of a debtor on the subject debt. In the first such letter, the IRS addressed a creditor's concern that filing the Form 1099–C would constitute a written admission that it had discharged the debt and would therefore make debtors unwilling to pay on their obligations. Citing subsection (a) of the regulations discussed above, the IRS responded that it "does not view a Form 1099–C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." I.R.S. Info. 2005–0207, 2005 WL 3561135 (Dec. 30, 2005). In the second letter, the IRS assured a concerned creditor that filing a Form 1099-C satisfies the reporting requirements of the statute and implementing regulations, neither of which "prohibit collection activity after a creditor reports by filing a Form 1099-C." I.R.S. Info. 2005–0208, 2005 WL 3561136 (Dec. 30, 2005).

The IRS thus treats the Form 1099-C as a means for satisfying a reporting obligation and not as an instrument effectuating a discharge of debt or preventing a creditor from

---

[3] Although the IRS's interpretation is expressed in an information letter rather than a regulation or ruling, and thus is not subject to *Chevron*-style deference, it is nonetheless "entitled to respect . . . to the extent that [its] interpretations have the power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (internal quotations omitted); *see also FDIC v. Cashion*, 720 F.3d 169, 179 (4th Cir. 2013).

seeking payment on a debt. And as the IRS correctly noted in its Information Letters, nothing in the relevant statute or regulations prohibits collection following the filing of a Form 1099-C.

>    **B.    As numerous courts have held, a Form 1099-C bears no relationship to actual discharge of a debt.**

Based on the plain language of 26 C.F.R. § 1.6050P–1, the purpose of Form 1099-C and the IRS's interpretation of applicable regulations, numerous courts have held that a Form 1099-C, standing alone, does not signify that a debt has been forgiven.

The IRS is "the administrative agency charged with the obligation of implementing [26 U.S.C. § 6050P] through its regulations." *Cashion,* 720 F.3d at 179. As such, its interpretations of those regulations, expressed in information letters, have been deemed "persuasive" and thus "entitled to respect." *Id*. Those interpretations have been unequivocal: a creditor's filing of Form 1099-C with the agency is "solely for the purposes of reporting requirements" under the IRC; it does ***not*** discharge or extinguish a debt nor in any way signify that such a discharge has been accomplished. Because the Form is simply an administrative exchange between the IRS and the creditor, the IRS has also clarified that neither the IRC nor applicable treasury regulations "prohibit collection activity after a creditor reports by filing a Form 1099-C." *Id*.

Numerous federal appellate and district courts—including this one—have thus held that, as a matter of law, the issuance of a Form 1099-C does not, standing alone, establish that a debt has been cancelled. *See FDIC v. Cashion,* 720 F.3d 169, 176-181 (4th Cir. 2013) (holding that claim of debt cancellation based solely on 1099-C form could not, as a matter of law, have resulted in a favorable verdict and there were thus no genuine issues of material fact), *aff'g F.D.I.C. v. Cashion*, 2012 WL 1098619, at *7 (W.D. N.C. Apr. 2, 2012);

*Owens v. Commissioner*, No. 02-61057, 2003 WL 21196200, at *3 (5th Cir. May 15, 2003) (holding that a Form 1099–C was not evidence that the creditor had actually cancelled a debt, but rather reflected at most an intention to cancel the debt in the future); *Capital One v. Massey*, No. 4:10-CV-01707, 2011 WL 3299934, at *3 (S.D. Tex. Aug. 1, 2011) (holding that "a 1099-C does not discharge debtors from liability" and that "fact that [the creditor] issued a 1099-C in relation to the [b]orrowers' indebtedness is [therefore] irrelevant and does not raise a genuine issue of material fact"); *U.S. v. Reed*, 2010 WL 3656001, at *2 (E.D. Tenn. 2010) (holding that, in absence of evidence "such as a surrender or cancellation of the note or a signed writing" by the creditor, creditor was entitled to judgment as a matter of law).

Various federal bankruptcy and tax courts have also concurred with the IRS's interpretation of the Form. *See In re Zilka*, 407 B.R. 684, 689 (Bankr. W.D. Penn. 2009) (holding that "Forms 1099–C, as a matter of law, do not themselves operate to legally discharge debtors from liability on those claims that are described in such Forms 1099–C") (internal quotations and citations omitted); *Carrington Mortg. Servs., Inc. v. Riley*, 478 B.R. 736, 744 (Bankr. D.S.C. 2012) (holding that the debtors' credit report and a Form 1099-C they received from the lender "were not dispositive, and there is no evidence that the note has been satisfied"); *Sims v. Commissioner*, T.C. Summ. Op. 2002-76, 2002 WL 1825373, at *2 (stating that a filed Form 1099-C was does not establish that the underlying debt was discharged). *See also In re Sarno*, 463 B.R. 163, 168 (Bankr. D. Mass. 2011) (holding that "a form 1099-C is 'informational' and . . . must be filed 'whether or not an actual discharge of indebtedness has occurred'") (internal citations omitted).

Many state courts that have addressed the issue have similarly agreed with the IRS, holding that Form 1099 is merely informational, and that other independent evidence is necessary to prove a creditor "cancelled" or forgave the debt. *See Int'l Comm. Bank of China, Los Angeles Branch v. L&L (USA), Inc.*, 2005 WL 605056, at *5 (Cal. Ct. App. Mar. 16, 2005) (requiring "independent evidence" that a debt was cancelled for a Form 1099-C to have any legal significance in discharging a debt); *Leonard v. Old Nat'l Bank Corp.*, 837 N.E.2d 543, 545-46 (Ind. Ct. App. 2005) (concluding that the issuance and filing of Form 1099-C is merely an informational filing with the IRS and, thus, does not operate to discharge a loan).

### C. As a matter of law, Plaintiff has insufficiently alleged that his debt was actually discharged.

As a matter of law, Plaintiff's mere receipt of a Form 1099-C is insufficient to permit this Court to infer that the underlying debt was canceled, even if Plaintiff alleges that he received the form because HSBC "has a policy whereby they decided to discontinue collection activity and discharge his debt." (Am. Compl. ¶ 18.) Given that the purpose of a Form 1099-C is to serve as a reporting and informational mechanism, such a filing could mean many any number of things: "[i]t may mean the debt has been discharged; it may mean the creditor intended to discharge the debt in the future; … it may mean that another of the 'identifiable events' in the regulation occurred apart from an actual discharge," or it may even mean the form was filed in error. *Cashion*, 720 F.3d at 180. But without more than Plaintiff's mere recitation that he received the form because his debt was discharged, this Court is deprived "of the contextual clues needed to decide between these alternatives" and is left with nothing more than "bald speculation" tying "receipt of the 1099-C Form to a specific reason as to why the [creditor] would have issued it." *Id.*; *see also Zilka*, 407 B.R. at 689 (Bankr. W.D. Penn. 2009) (rejecting a debtor's assertions, in the absence of any

- 9 -

evidence other than his mere receipt of a Form 1099-C, that the form's issuance "*must* have been a discharge of indebtedness . . . pursuant to a decision by the [lender], or the application of a defined policy of [the lender], to discontinue collection activity and discharge such claims"); *Atchison v. Hiway Federal Credit Union*, No. 12-2143, 2013 WL 1175020, at *3-4 (D. MN. Mar. 20, 2013) (recognizing that "a Form 1099-C does not operate alone to legally discharge a debtor from liability" but sustaining complaint only where there were specific factual allegations, other than mere receipt of a Form 1099-C, that creditor reported zero balance on debt to two credit bureaus and thus might have intended to cancel debt, though still expressing serious skepticism that "Plaintiff's claim will survive motion for summary judgment" given state of law and "current evidence before court"); *Reed*, 2010 WL 3656001, at *2 (holding that, in absence of independent evidence other than mere receipt of 1099-C, "such as a surrender or cancellation of the note or a signed writing" by the creditor, creditor was entitled to judgment as a matter of law); *Int'l Comm. Bank of China*, 2005 WL 605056, at *5 (requiring "independent evidence" that a debt was cancelled for a Form 1099-C to have any legal significance in discharging a debt).

Such speculation is insufficient to survive a motion to dismiss, as Plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010)(emphases in original). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face," meaning that it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* It must, in other words, "state sufficient facts to raise a plaintiff's right to relief above the speculative level."

*Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (internal citations omitted). As a matter of law, Plaintiff's "bald speculation," without more, permits no inferences one way or the other and thus fails to meet this standard. Accordingly, Counts I and II should be dismissed.

## II. PLAINTIFF'S FDCPA CLAIM AGAINST CAPITAL ONE FAILS AS A MATTER OF LAW ON THE SAME GROUNDS AS HIS FCRA CLAIMS.

In Count III, Plaintiff alleges that Capital One violated FDCPA § 1692e(8) by continuing to report that his account was charged-off with a balance due when it knew or should have known that information to be false. (Am. Compl. ¶ 50.) Plaintiff's sole basis for challenging the accuracy of that information is his assertion that his debt was discharged. And Plaintiff's sole basis for asserting that his debt was discharged is his receipt of a Form 1099-C. As discussed above, however, these allegations are insufficient, as a matter of law, to establish that Plaintiff's debt was, in fact, discharged. Accordingly, Plaintiff's FDCPA claim against Capital One should be dismissed.

## III. CAPITAL ONE'S CREDIT REPORTING DID NOT VIOLATE THE WCA.

Likewise, and for the same reasons, Plaintiff's claim under the WCA—that Capital One "[d]isclosed or threatened to disclose information adversely affecting the consumer's reputation or credit worthiness with knowledge or reason to know that the information is false," Wis. Stat. § 427.104(c) (Am. Compl. ¶ 53.)—also fails, and Count IV should be dismissed.

## CONCLUSION

WHEREFORE, Defendants Capital One, N.A. and HSBC Card Services, Inc. request that this Court enter an order dismissing Counts I-IV of Plaintiff's Amended Complaint with prejudice and granting any other relief the Court deems just and appropriate.

- 12 -

        Respectfully submitted,

        CAPITAL ONE, N.A. and
        HSBC CARD SERVICES, INC.

By:  /s/ Angad S. Nagra
      One of their Attorneys

Anna-Katrina S. Christakis
Angad S. Nagra
Pilgrim Christakis LLP
53 West Jackson Boulevard, Suite 1515
Chicago, Illinois 60604
Ph. (312) 924-1773
Fax (312) 939-0983

- 13 -

## CERTIFICATE OF SERVICE

      Angad S. Nagra, an attorney, certifies that on July 3, 2014, he electronically filed the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I-IV OF PLAINTIFF'S AMENDED COMPLAINT** using the ECF system, which will send notification of that filing to all counsel of record in this matter.

                                                      /s/ Angad S. Nagra